UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID L. HOLCOMB, SR.,<br><br>    Plaintiff,<br><br>  v.<br><br>PFIZER, INC.,<br><br>    Defendant. | No. 1:20-cv-1008-KJM-KJN (PS)<br><br>FINDINGS AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 58.) |

  Plaintiff, who proceeds without counsel in this action, seeks monetary damages for injuries allegedly sustained via his use of defendant Pfizer's drug Lipitor. (See ECF No. 51 (the first amended complaint ("1AC").) Presently before the court is defendant's motion to dismiss for a failure to state a claim and request to deny further leave to amend, given that plaintiff was previously granted leave to amend with guidance from the court.[1] (ECF No. 58.) Alternatively, defendant moves for a more definite statement. (Id.) Plaintiff's son filed an opposition on plaintiff's behalf, and defendant replied. (ECF Nos. 73, 74.)

  For the reasons stated below, the court recommends defendant's motion be granted and this case be closed.

///

---

[1] This matter was referred to the undersigned by Local Rule 302(c)(21) for the entry of findings and recommendations. See Local Rule 304.

1

**Procedural Posture**

On April 27, 2020, plaintiff (aided by licensed counsel) filed a complaint against defendant Pfizer and 100 doe defendants in state court, alleging claims of Negligence, Breach of Express Warranty, Breach of Implied Warranty, and "Strict Products Liability for Manufacture and Design Defects and Failure to Warn." (ECF No. 1 at 11-21.) Upon service of process, defendant removed to federal court and answered the complaint. (ECF Nos. 1, 3.) The case was assigned to District Judge Drozd and Magistrate Judge McAuliffe in the Fresno division of the Eastern District. (ECF No. 4.) On December 28, 2020, defendant moved for judgment on the pleadings. (ECF No. 10.)

Shortly thereafter, plaintiff filed two documents the court interpreted as his request to relieve himself of counsel; the court granted his request, leaving plaintiff to proceed pro se. (ECF Nos. 15, 16, 17.) For the next 2+ years, plaintiff requested and received multiple extensions of time to file opposition to defendant's motion. (See ECF Nos. 18-40.) On April 22, 2022, plaintiff filed his opposition and defendant replied. (ECF Nos. 40, 42.) The case was reassigned to District Judge de Alba, who in December of 2022 granted defendant's motion and allowed plaintiff to amend all claims except his strict liability design defect claim. (ECF Nos. 43, 47.)

After further extensions of time, plaintiff filed his first amended complaint on March 7, 2023. (ECF No. 51.) This filing consists of one page of facts and averments regarding plaintiff's Lipitor use, but does not explicitly reference any particular source of law or categories of damages sought. (Id.) Two weeks later, defendant filed a motion requesting either dismissal with prejudice or a more definite statement. (ECF Nos. 53-55.) The motion was refiled after defendant complied with Judge de Alba's standing orders. (ECF Nos. 57-60.) Plaintiff filed no opposition, but soon after defendant's first reply brief, the court reassigned the case to the undersigned pursuant to Local Rules 120 (transfer of cases in Stanislaus County from the Fresno Division to the Sacramento Division) and 302(c)(21) (referring pro se matters to the magistrate judge). (ECF Nos. 68, 71.) The undersigned provided plaintiff one final opportunity to respond, but plaintiff's son filed a brief instead; defendant replied. (ECF Nos. 72-74.)

///

2

**Facts from the Original Complaint (ECF No. 1)**[2]

The original complaint alleges that in the summer of 2018, plaintiff's primary care physician prescribed him Lipitor.  (Id. at 13, ¶ 12.)  After he had taken the drug for five days, his physician told him to discontinue use because plaintiff's cholesterol levels were not high enough.  (Id.)  Shortly afterwards, plaintiff was admitted to the hospital where surgeons removed his gallbladder.  (Id.)  A year after the surgery, plaintiff's doctor once again placed him on Lipitor.  (Id. at ¶ 13.)  About a month later, plaintiff began to feel unsteady on his feet and experienced pain in his legs.  (Id. at ¶ 14.)  Plaintiff went to a health clinic, where a blood draw indicated damage to both his liver and kidneys.  (Id. at ¶ 15.)  Based on these results, hospital staff told plaintiff to stop taking Lipitor.  (Id.)  Despite complying with these instructions, plaintiff continued to deteriorate, eventually becoming paralyzed from the waist down and having difficulty moving his arms.  (Id.)  Plaintiff checked into Memorial Medical Center in Modesto, California on August 14, 2019, where doctors diagnosed him with statin induced rhabdomyolysis.  (Id. at ¶ 16.)  Plaintiff's diagnosis had caused muscle deterioration, edema, damage to his liver and kidneys, and an inability to use his extremities.  (Id.)  Plaintiff remained at the hospital for several weeks and continued to undergo treatment after his discharge.  (Id.)

Based on these allegations, plaintiff asserted claims of Negligence, Breach of Express Warranty, Breach of Implied Warranty, and "Strict Products Liability for Manufacture and Design Defects and Failure to Warn."  (Id. at 15-20.)  Plaintiff sought compensatory damages, medical expenses, loss of earnings and/or earning capacity, future medical monitoring costs, punitive damages, prejudgment interest, mental and emotional distress, costs, and disgorgement of profits.  (Id. at 20-21.)

---

[2] The facts in this section derive from the original complaint (ECF No. 1 at 11-21), as summarized by Judge de Alba in her order on the motion for judgment on the pleadings.  (ECF No. 47 at 2.)  Because the original complaint is currently not the operative complaint, the court does not rely on this filing for purposes of defendant's motion to dismiss.  See Local Rule 220 ("[E]very pleading to which an amendment . . . has been allowed by court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading.").  However, it is considered for purposes of whether further leave to amend be granted  Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (noting that "[t]he general rule is that an amended complaint supercedes the original complaint and renders it without legal effect").

**Scope of Judge de Alba's Order re: Defendant's Motion for Judgment on Pleadings[3]**

In the December 14, 2022 order, Judge de Alba found, among other things, that:

A. Plaintiff's pro se opposition statement of 'I oppose' was insufficient, and the submission of 400 pages of medical records was inappropriate because evidentiary matters go beyond the scope of the pleadings;

B. California construes Negligence and Strict Liability Defect claims similarly, and:
   i. Though both are generally allowed for prescription-drug products-liability claims;
   ii. The Warning Defect claims fail to allege both a breach and causation and otherwise fails to state facts sufficient to survive defendant's preemption defense;
   iii. The Strict Liability Design Defect claim is not permitted by California law, and the Negligent Design Defect claim fails to "identify a particular defect that caused either [plaintiff's] rhabdomyolysis or gallbladder surgery," so as for the court to resolve defendant's preemption defense;
   iv. The Manufacturing Defect claims contain no facts to indicate "how the doses of Lipitor [plaintiff] consumed differed [] from others that [d]efendant produced";

C. The Breach of Express and Implied Warranty claims fail to allege "any specific warranties regarding gallbladder surgery" or any causal connection between the gallbladder surgery and plaintiff's Lipitor use; as for the rhabdomyolysis diagnosis, any warranty claim fails to allege facts that can overcome the preemption defense, given Lipitor's FDA-approved label.

(ECF No. 47.) Thus, the court dismissed plaintiff's strict liability design defect claim with prejudice, and dismissed all other claims with leave to amend. (Id. at 13.)

---

[3] The court references Judge de Alba's order here, as it expresses the "law of the case": a doctrine counseling that when a court decides on a rule, it should ordinarily follow that rule during the pendency of the matter. See Arizona v. California, 460 U.S. 605 (1983); see also Slotkin v. Citizens Cas. Co., 614 F.2d 301, 312 (2d Cir. 1979) (noting the law of the case "does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided"); Mayweathers v. Terhune, 136 F. Supp. 2d 1152, 1153-54 (E.D. Cal. 2001) (noting that a court can depart from the law of the case where substantially different evidence or a change in controlling authority arises, or a prior decision was clearly erroneous and manifestly unjust).

**Facts from the First Amended Complaint**[4]

The entirety of plaintiff's first amended complaint is a single page, as follows:

> Plaintiff David Holcomb would like to amend his complaint to state that Lipitor has failed to warn of other possible side effects.
>
> Rhabdomyolysis is listed in the warning label of Lipitor, yet there are other complications that can result after being diagnosed with Rhabdomyolysis and they are much more severe. Plaintiff was temporarily paralyzed because of use of Lipitor. His extremities were so damaged that he could not pick up a Styrofoam cup. The plaintiff also suffered CKD (chronic kidney disease) due to use of Lipitor and his blood testing showed elevated Creatine Phosphokinase levels of 61,000. Normal levels are around 600. Lipitor also caused elevated Ferritin with anemia. Ferritin is a protein in the blood that is associated with Liver Disease. Liver Disease negatively affects the kidneys, Gallbladder, and the Urinary System.
>
> As a result of Lipitor use, Plaintiff David Holcomb suffered Cholecystitis (gallbladder inflammation and ultimately failure), which resulted in his gallbladder being removed. Proper warning of such side effects would have made his physician more aware of the symptoms, so treatment could be stopped and Plaintiff David Holcomb would not have sustained life changing, permanent damage to his body.
>
> His testing showed and continues to show erratic blood sugar levels, common with type 2 diabetes. Lipitor has been sued for causing diabetes and is associated with 22% increase in diabetes risk. He was never diagnosed with diabetes prior to use of Lipitor. He must receive intravenous Infusions every 6 months for 6 hours a treatment, to regulate the immunoglobulin levels in his body, so that its antibod[ies] will not attack his muscles. Plaintiff David Holcomb's complaint is that Lipitor use has caused this failure in the Urinary system, resulting in other injuries and damages.
>
> Plaintiff David Holcomb will never run, cannot pick up his grandchildren nor can he walk comfortably, as he did prior to his use of Lipitor. Plaintiff David Holcomb believes his complaint is in good faith and that Pfizer Inc. product Lipitor is the sole cause of the damages.

(ECF No. 51.) Defendant now moves to dismiss any purported claims in the first amended complaint with prejudice for failure to state a claim, or for a more definite statement. (ECF No. 58.)

///

---

[4] The facts in this section form the basis of plaintiff's currently-operative complaint, and are viewed in a light most favorable to plaintiff, the nonmoving party. Papasan, 478 U.S. at 283.

**Legal Standards – Rule 12 Motions for Failure to State a Claim**

Rule 8(a) requires that a pleading be "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Each allegation must be simple, concise, and direct. Rule 8(d)(1); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (overruled on other grounds) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Rule 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to allege a cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pleaded factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986). The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

Pro se pleadings are to be liberally construed. Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (liberal construction appropriate even post–Iqbal). Prior to dismissal, the court is

1 to tell the plaintiff of deficiencies in the complaint and provide an opportunity to cure—if it
2 appears at all possible the defects can be corrected. See Lopez v. Smith, 203 F.3d 1122, 1130-31
3 (9th Cir. 2000) (en banc); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

**Legal Standards – Rule 12 Motion for a More Definite Statement**

5 Rule 12(e) allows a party to move for a more definite statement of a pleading to which a
6 responsive pleading is allowed but which is so vague, ambiguous, or indefinite that the party
7 cannot reasonably prepare a response. See Swierkiewicz, 534 U.S. at 514 ("[If a] pleading fails
8 to specify the allegations in a manner that provides sufficient notice, a defendant can move for a
9 more definite statement under Rule 12(e) before responding."); Neveau v. City of Fresno, 392 F.
10 Supp. 2d 1159, 1169 (E.D. Cal. 2005) (Rule 12(e) motions attack "the unintelligibility of the
11 complaint, not simply the mere lack of detail, and is only proper when a party is unable to
12 determine how to frame a response to the issues raised by the complaint").

**Parties' Arguments**

14 Defendant argues plaintiff cannot maintain any purported claims for any failure to warn
15 because of a lack of breach or proximate cause and due to federal preemption. (ECF No. 58.)
16 Defendant also notes the first amended complaint does not appear to assert any of the other
17 previous claims of negligent design defects, manufacturing defects, or breach of warranties, but
18 even if plaintiff intended these claims to be reasserted, they fail for similar reasons. (Id.)
19 Alongside its motion, defendant submits a request for judicial notice, referencing the FDA
20 approved labels for Lipitor between 2017-19 (ECF No. 60, citing Exhibits 1-3 at ECF No. 59-1, -
21 2, and -3.) Given these facts, as well as that plaintiff previously had been provided legal
22 standards for his potential claims, defendant requests dismissal with prejudice. (ECF No. 58 at 9-
23 16.) Alternatively, defendant requests plaintiff be required to submit a more definite statement.
24 (ECF No. 58 at 16-17.)
25 Plaintiff himself did not file timely opposition, despite multiple opportunities to do so.
26 The court did receive an opposition brief from a David Holcomb Jr., who purports to submit
27 arguments on behalf of plaintiff that generally oppose dismissal and generally reference a page of
28 attached medical evidence. (ECF No. 73.) However, it does not appear that Mr. Holcomb Jr. is

1 an attorney, and so the court cannot consider this briefing. See Fed. R. Civ. P. 11(a) (requiring

2 "[e]very pleading" to be "signed by at least one attorney of record in the attorney's name—or by

3 a party personally if the party is unrepresented"); C.E. Pope Equity Tr. v. United States, 818 F.2d

4 696, 697-98 (9th Cir. 1987) (noting that a non-attorney "has no authority to appear as an attorney

5 for others," and collecting cases); see also Simon v. Hartford Life, Inc., 546 F.3d 661, 664-65 (9th

6 Cir. 2008) (noting that "courts have routinely adhered to the general rule prohibiting pro se

7 plaintiffs from pursuing claims on behalf of others in a representative capacity").

**Analysis**

Construing the complaint liberally, the court perceives that plaintiff intends to focus his allegations on a failure to warn theory. (ECF No. 51 at 2 ("Plaintiff David Holcomb would like to amend his complaint to state that Lipitor has failed to warn of other possible side effects.").) Defendant appears to concur. (See ECF No. 58 at 14 ("While poorly pleaded, the FAC, if read broadly, might be liberally construed as alleging claims for failure to warn in connection with rhabdomyolysis, rhabdomyolysis sequalae, and gallbladder issues."). Given this fact, the court recommends denial of defendant's motion for a more definite statement. Griffin v. Cedar Fair, L.P., 817 F. Supp. 2d 1152, 1156 (N.D. Cal. 2011) (noting that where a party understands the substance of the claim asserted . . ., a motion for a more definite statement need not be granted); see also Cellars v. Pacific Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999) ("Motions for a more definite statement are viewed with disfavor, and are rarely granted."). Thus, the court proceeds to analyze whether plaintiff has cured the previous defects to state a failure to warn claim—as under the negligence and strict liability standards previously cited by Judge de Alba.[5]

As noted by Judge de Alba, to state a negligent warning defect claim, a plaintiff must allege that the defendant failed to warn of known risks about which a reasonably prudent manufacturer would have warned. Carlin v. Superior Court, 920 P.2d 1347, 1351 (Cal. 1996). Under a strict liability theory, a plaintiff need not allege a breach of duty, but must show that the

---

[5] The court revisits the other five issues (negligent design defect, strict liability manufacturing defect, negligent manufacturing defect, breach of express warranty, and breach of implied warranty, in the leave to amend section below).

"defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." Id. Under both theories, courts consider the adequacy of prescription drug warnings by regarding the physician, rather than the patient, as the recipient. See Brown v. Superior Ct., 44 Cal. 3d 1049, 1062 (1998). Therefore, a complaint will not demonstrate proof of causation "if stronger warnings would not have altered the conduct of the prescribing physician." Motus v. Pfizer Inc. (Roerig Div.), 358 F.3d 659, 661 (9th Cir. 2004).

Additionally, Judge de Alba noted that fail-to-warn claims require allegations that can overcome federal preemption issues. (See ECF No. 47 at 7-9.) This includes requirements that: (i) where the FDA approves a label's language and the drug goes to market, a manufacturer must receive the FDA's approval to make major changes to the warnings; (ii) minor changes can be made via a "to add or strengthen a contraindication, warning, precaution, or adverse reaction" if the manufacturer acquires new information, 21 C.F.R. § 314.70(c)(6)(iii)(A); but (iii) without new information, federal law preempts any state tort law that might require alterations to a label due to its alleged inadequacy. (See id.)

Turning to the first amended complaint, plaintiff's failure to warn theory appears to focus on allegations that, while rhabdomyolysis is listed on the Lipitor warning label, this warning fails to detail other complications that can arise from using Lipitor. Plaintiff alleges these include temporary paralysis, damage to his extremities, chronic kidney disease, elevated creatine phosphokinase levels, elevated ferritin with anemia (which can lead to liver disease), and cholecystitis (which can result in gallbladder failure, as happened to plaintiff). (ECF No. 51 at 2.) However, these "new" facts do not suffice to overcome the issues with the original complaint previously identified by Judge de Alba, much less suffice to state a claim under either fail-to-warn theory.

The undersigned notes that the original complaint detailed many of the same allegations plaintiff focuses on in the first amended complaint. (See ECF No. 1 at 3, ¶ 12 (alleging gallbladder removal in 2018); id. at 4, ¶ 15 (alleging kidney and liver disease, as well as paralysis from the waist down and inability to use upper extremities); id. at ¶ 16 (alleging 2019 diagnosis

of rhabdomyolysis and inability to walk).)   Thus, there is a real question about how much of the first amended complaint is actually "new."

Bigger picture, though, the original complaint relied on the following allegation that was core to plaintiff's failure-to-warn claim:  that defendant was aware of the "high rate of unexplained failures of Lipitor but did not provide this information to plaintiff or plaintiff's physicians."  (Id. at ¶ 17.)  However, Judge de Alba found these facts and allegations insufficient, stating:

> To the extent that Plaintiff claims Defendant failed to provide any warnings about the risk of rhabdomyolysis, this allegation cannot be true. Defendant has provided copies of the FDA-approved labels for Lipitor from 2017, 2018, and 2019, which repeatedly mention the risk of rhabdomyolysis.  Assuming that Plaintiff's argument is that Defendant's warnings about rhabdomyolysis were inadequate, that claim also fails.  At one point, the complaint alleges that "DEFENDANTS were aware of high rate of unexplained failures of Lipitor but did not provide this information to PLAINTIFF or PLAINTIFF's physicians." (ECF No. 1 at 14, ¶ 17.)  The complaint does not, however, explain what these failures were or when they occurred.  It also fails to allege how Defendant might have altered Lipitor's label to warn about those failures.  Finally, it provides no information about how knowledge of those failures would have changed Plaintiff's physician decision to prescribe.  Without this information, the Court cannot discern a breach of Defendant's duty to Plaintiff's physician.  Nor can it find that inadequate information in Lipitor's label was the cause of Plaintiff's injuries.

(ECF No. 47 at 6-7.)  Judge de Alba reiterated this issue in the discussion resolving defendant's preemption defense, stating:

> The court agrees with Defendant that Plaintiff has failed to allege sufficient facts in his complaint to demonstrate that Defendant could have used the CBE process [a less formal administrative procedure] to change Lipitor's label.  The extent of the newly acquired information Plaintiff alleges is a "high rate of unexplained failures of Lipitor."  This allegation does not describe the type of failures about which Defendant knew.  Nor does it articulate whether those failures were related to rhabdomyolysis or gallbladder surgery.  Plaintiff also fails to define what a "high rate" of failure means.  The ambiguity of Plaintiff's allegation does not lead to a reasonable inference that Defendant had newly acquired information to make a labeling change through the CBE process.

(Id. at 9.)  Given that the issues with this claim concerned a lack of facts, Judge de Alba gave

plaintiff an opportunity to provide additional facts concerning, among other things, just what the "high rate of unexplained failures" was. (Id. at 7.) However, the first amended complaint provides no additional facts that speak to these alleged high rate of failures, what they were, when they occurred (even assuming the court could infer from plaintiff's allegations that knowledge of these issues would have allowed defendant to use either formal channels or the CBE process to strengthen the warnings and allow physicians to alter their patients' prescriptions). Thus, plaintiff's failure-to-warn claims, such as they are made in the 1AC, fail for the same reasons as in the original complaint. See Byrd v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (noting that though a court must liberally construe pro se complaints, this does not require it to supply essential elements of claims that were not pled); Iqbal, 556 U.S. at 678–80.

**Leave to Amend**

Previously, Judge de Alba granted plaintiff leave to amend, finding it would not be futile to allow plaintiff to allege additional facts to make out any claim for failure to warn, design defect, manufacturing defect, or warranty, either under negligent or strict liability theories (except for a strict liability design defect). (ECF No. 47 at 12-13.) Judge de Alba found plaintiff was not motivated by bad faith, and though there was significant delays since the original complaint was filed, this was due solely to the court's overcrowded docket and so prejudiced both parties. (Id.) Judge de Alba expressed skepticism that plaintiff could provide additional facts to support his claims, but could not say it was futile and so provided plaintiff with guidance on what would be needed to make any claims whole. (See, generally, ECF No. 47.)

The undersigned concurs with Judge de Alba's analysis regarding bad faith and prejudice, and so turns to whether it would be futile to allow further amendment on any dismissed claims. See Lopez, 203 F.3d at 1130-31 (noting that prior to dismissing a claim with prejudice, the court is to tell the plaintiff of deficiencies in the complaint and provide an opportunity to cure—if it appears at all possible the defects can be corrected). Given that plaintiff had previously been provided with instructions on how to amend, and given that plaintiff failed to allege facts to meet any of the claims that were dismissed without prejudice, the undersigned recommends no further

11

leave to amend be granted. Cahill, 80 F.3d at 339; Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 650-51 (9th Cir. 1984) (affirming dismissal with prejudice where plaintiffs were given guidance to remedy the deficiencies of their original complaint at the time that pleading was dismissed but they failed to follow that advice). Specifically, the 1AC fails to allege facts concerning "a particular defect that caused either [plaintiff's] rhabdomyolysis or gallbladder surgery" (regarding the design defect claim and federal preemption, discussed at ECF No. 47 at 10); "how the doses of Lipitor [plaintiff] consumed differed in any way from others that [d]efendant produced" (regarding the manufacturing defect claim, discussed at ECF No. 47 at 11); or "any specific warranties regarding gallbladder surgery" or FDA preemption of the rhabdomyolysis issue (regarding the breach of express or implied warranty claims, discussed at ECF No. 47 at 11-12).)

## **RECOMMENDATIONS**

Accordingly, it is hereby RECOMMENDED that:

1. Defendant's motion to dismiss (ECF No. 58) be GRANTED;
2. Plaintiff's claims be DISMISSED WITH PREJUDICE; and
3. The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: January 16, 2024

holc.1008

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE